IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANDREW FOLEY, *et al.*,              :

        Plaintiffs,

                         Case No. 3:15-cv-96

        v.                                    :

                         JUDGE WALTER H. RICE

UNIVERSITY OF DAYTON, *et al.*,

        Defendants.              :

---

DECISION AND ENTRY SUSTAINING IN PART DEFENDANT DYLAN
PARFITT'S AND DEFENDANT MICHAEL R. GROFF'S MOTIONS FOR
JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, TO
CERTIFY QUESTIONS OF LAW TO THE OHIO SUPREME COURT
(DOCS. ##26, 28); SUSTAINING DEFENDANT DYLAN PARFITT'S
AND DEFENDANT MICHAEL R. GROFF'S MOTIONS FOR A STAY
(DOCS. ##27, 29); STAYING PROCEEDINGS AS TO THESE TWO
DEFENDANTS PENDING CERTIFICATION TO OHIO SUPREME COURT

---

This matter is currently before the Court on several motions filed by

Defendants Dylan Parfitt and Michael R. Groff:  (1) Motions for Judgment on the

Pleadings or, in the Alternative, to Certify Questions of Law to the Ohio Supreme

Court, Docs. ##26, 28; and (2) Motions for a Stay, Docs. ##27, 29.  After

reviewing the parties' briefs and the relevant case law, the Court concludes that

there are several dispositive unresolved questions of state law.  Accordingly, the

Court sustains Defendants' alternative motions to certify those questions to the

Ohio Supreme Court, and stays all proceedings with respect to Defendants Parfitt

and Groff.

## I.    Background and Procedural History

According to the First Amended Complaint, Doc. #3, in the early morning hours of March 14, 2013, Plaintiffs Evan Foley, Andrew Foley and Michael Fagans, knocked on the door of a townhouse located on the campus of the University of Dayton ("UD"), mistakenly believing that this was where their friend lived. Defendant Michael Groff, who was allegedly intoxicated, opened the door.  When Evan asked if his friend was at home, Groff allegedly became belligerent and began shouting profanities.  Evan, realizing that he was at the wrong townhouse, extended his hand in an effort to apologize, but Groff allegedly slammed the door in his face.  Evan knocked once more, and then he and the others turned to leave. After they began walking down the street toward Evan's apartment, Groff re-opened the door and yelled that he had contacted the UD Police Department.

Shortly thereafter, Sergeant Thomas Ryan of the UD Police Department approached Evan.  Michael Fagans and Andrew Foley, who were walking slightly ahead of Evan, kept walking.  Sergeant Ryan asked Evan if he knew why he was being stopped.  Evan responded, "of course," and indicated that Groff said he had called the police.  Ryan then handcuffed Evan and arrested him for burglary.  After Evan was taken to jail, Sergeant Ryan interviewed Groff and his roommate, Defendant Dylan Parfitt.  The following day, Andrew Foley and Michael Fagans were also arrested for burglary.  Ultimately, the criminal charges against Andrew and Michael were dismissed, and the charges against Evan were resolved.

2

On March 13, 2015, Evan Foley, Andrew Foley and Michael Fagans filed suit against UD and eleven UD Police Department employees, seeking relief under 42 U.S.C. § 1983 for violations of their constitutional rights, and asserting state law claims of false arrest, false imprisonment, malicious prosecution, assault, battery, negligence, negligent hiring, supervision, training and retention, and intentional infliction of emotional distress.

Plaintiffs also asserted claims of "negligent misidentification" against Michael Groff and Dylan Parfitt. Plaintiffs allege that: (1) Groff and Parfitt owed them a duty of care when providing information to law enforcement authorities regarding their involvement in the commission of a crime; (2) Groff and Parfitt reported to UD law enforcement authorities that Plaintiffs had been involved in a criminal act, namely, the refusal to leave their property after being asked to do so, inferred an intent to cause harm, and claimed that they had been involved in a robbery or an attempted robbery; (3) Groff and Parfitt breached their duty of care to Plaintiffs by negligently, improperly identifying them as being responsible for a criminal act; and (4) because of this improper, negligent misidentification, Plaintiffs suffered economic and non-economic damages. Doc. #3, PageID##121-22.

Defendants Groff and Parfitt have each filed Motions for Judgment on the Pleadings or, in the alternative, to Certify Questions of Law to the Ohio Supreme Court. Docs. ##26, 28. They have also asked the Court to stay all proceedings pending resolution of those motions. Docs. ##27, 29.

II.    **Motions for Judgment on the Pleadings or, in the alternative, to Certify Questions of Law to the Ohio Supreme Court (Docs. ##26, 28)**

    A.    **Federal Rule of Civil Procedure 12(c)**

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B. Summary of Parties' Arguments

Defendants Groff and Parfitt argue that the negligent misidentification claim is subject to dismissal under Rule 12(c) because: (1) statements made to a police officer implicating a third person in a crime are absolutely privileged; (2) the negligent misidentification claim is really a defamation claim in disguise, and is therefore time-barred; and (3) at the very least, their statements to UD police officers are subject to a qualified privilege, and Plaintiffs have failed to allege that those statements were made with actual malice.

In the alternative, Defendants argue that, because the law in this area is unsettled, the Court should certify several questions to the Supreme Court of Ohio, pursuant to Supreme Court Practice Rule 9.01(A), which permits a federal court to certify questions of law to the Ohio Supreme Court if "there is a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of [the] Supreme Court." Defendants propose the following questions for certification:

> (1) Does the absolute privilege recognized in *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497 (1994) extend to statements made to law enforcement officers?;

5

(2) Are statements to law enforcement officers implicating another person in criminal activity entitled to an absolute privilege against civil liability?;

(3) Is the doctrine of absolute privilege applicable to claims of negligent misidentification?; and

(4) What is the statute of limitations for claims of negligent identification/misidentification?

Plaintiffs note that, while Defendants' arguments all rest on the faulty premise that a claim of negligent misidentification is treated the same as a defamation claim, Ohio courts have long recognized the tort of negligent misidentification, separate and distinct from a claim of defamation.

Plaintiffs argue that the doctrines of absolute and qualified privilege, which are common defenses to claims of defamation, are not available to shield Groff and Parfitt from civil liability for negligent misidentification.  In the alternative, Plaintiffs argue that, even if their negligent misidentification claim is construed as a defamation claim, Defendants' statements are not subject to an absolute or qualified privilege under the circumstances presented here.  Plaintiffs also deny that their claim of negligent misidentification is barred by the one-year statute of limitations applicable to defamation claims.  Based on the foregoing, Plaintiffs contend that there is no reason to certify any of the above questions to the Supreme Court of Ohio.

### C.    Negligent Misidentification vs. Defamation

There appears to be no serious dispute that Ohio recognizes the tort of negligent misidentification, separate and apart from the tort of defamation, "for

6

persons who are negligently[,] improperly identified as being responsible for committing a violation of the law, and who suffer injury as a result of the wrongful identification." *Wigfall v. Society Nat'l Bank*, 107 Ohio App.3d 667, 673, 669 N.E.2d 313, 316 (Ohio Ct. App. 1995). *See also Mouse v. Central Savings & Trust Co.*, 120 Ohio St. 599, 167 N.E. 868 (Ohio 1929); *Walls v. Columbus*, 10 Ohio App.3d 180, 182, 461 N.E.2d 13, 16 (Ohio Ct. App. 1983); *Barilla v. Patella*, 144 Ohio App.3d 524, 534, 760 N.E.2d 898, 905 (Ohio Ct. App. 2001); *Woods v. Summertime Sweet Treats, Inc.*, No. 08-MA-169, 2009 WL 3806179, at *5 (Ohio Ct. App. Nov. 13, 2009); *Cummerlander v. Patriot Prep. Academy*, *Inc.*, 86 F. Supp.3d 808, 826 (S.D. Ohio 2015); *Breno v. City of Mentor*, No. 81861, 2003 WL 21757504, at *4 (Ohio Ct. App. July 31, 2003).

Although the same set of facts could easily give rise to claims of both negligent misidentification and defamation, the elements of these two torts are completely different. To establish a claim of defamation, the plaintiff must show: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Am. Chem. Soc. v. Leadscope, Inc*., 133 Ohio St. 3d 366, 389, 978 N.E.2d 832, 852 (quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368, 690 N.E.2d 903 (1996)). In contrast, "[a]s with any cause of action sounding in negligence," in order to prevail on a claim of

7

negligent misidentification, a plaintiff must prove duty, breach of duty, proximate cause and injury.  *Wigfall*, 107 Ohio App.3d at 673, 669 N.E.2d at 316.

Even though Ohio recognizes negligent misidentification as a cause of action separate and distinct from a claim of defamation, the boundary line between these two torts, in several respects, is not well-defined, as discussed in further detail below.

### D.    Statute of Limitations for Claims of Negligent Misidentification

Defendants argue that Plaintiffs' claim of negligent misidentification sounds in defamation and is, therefore, subject to the one-year statute of limitations for defamation claims set forth in Ohio Revised Code §2305.11(A).  They further argue that, because the Complaint was filed more than one year after the incident took place, Plaintiffs' claim is time-barred.

Plaintiffs note, however, that the court in *Wigfall* specifically held that "[t]he one-year state of limitations applicable to a defamation claim is not applicable" to a claim of negligent misidentification.  *Wigfall*, 107 Ohio App.3d at 673 n.4, 669 NE.2d at 316.  Rather, it appears that a claim of negligent misidentification—like most negligence claims—is subject to the four-year statute of limitations set forth in Ohio Revised Code § 2305.09(D).  *Id.* at 672, 669 N.E.2d at 316.[1]

_____

[1]   In the alternative, Plaintiffs suggest that the two-year statute of limitations set forth in Ohio Revised Code § 2305.10(A) might apply.  That statute, however, governs claims of product liability and actions for bodily injury or injury to personal property, and is inapplicable here.

Other cases, however, suggest that, if a cause of action involves an injury stemming from a false statement, it should be treated as a defamation claim for purposes of determining the applicable statute of limitations. In *Cromartie v. Goolsby*, No. 93438, 2010 WL 2333004, at *5 (Ohio Ct. App. June 10, 2010), defendant argued that plaintiff's claims of defamation and malicious prosecution were time-barred. In response, the plaintiff filed an amended complaint, asserting a claim of negligent misidentification. The court, however, rejected this attempt to reclassify the defamation claim as a negligent misidentification claim in order to circumvent the one-year statute of limitations, noting that the claims stemmed from the same set of facts. *See also Breno*, 2003 WL 21757504, at *3 (holding that a claim of emotional distress, which arose out of an allegedly false communication to the police, sounded in defamation, and was therefore subject to a one-year statute of limitations); *Worpenberg v. Kroger Co.*, No. C-010381, 2002 WL 362855, at **5-6 (Ohio Ct. App. Mar. 8, 2002) (holding that a claim of negligent damage to reputation, stemming from false accusations of theft by an employee, sounded in defamation and was barred by the one-year statute of limitations).

In short, it is not clear whether claims of negligent misidentification should be treated as defamation claims or as negligence claims for purposes of determining the applicable statute of limitations. Because this issue of state law is potentially dispositive in this case, the Court concludes that certification to the Ohio Supreme Court is appropriate.

### E.  Applicability of Privilege Doctrines to Claims of Negligent Misidentification

Certification is also appropriate because it is not clear whether the doctrines of absolute privilege or qualified privilege, commonly asserted as defenses to claims of defamation, may also be asserted as defenses to claims of negligent misidentification under Ohio law.

On certain privileged occasions, false, defamatory statements may be published without civil liability "where there is a great enough public interest in encouraging uninhibited freedom of expression to require the sacrifice of the right of the individual to protect his reputation by civil suit." *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505, 634 N.E.2d 203, 209 (Ohio 1994) (quoting *Bigelow v. Brumley*, 138 Ohio St. 574, 579-80, 37 N.E.2d 584, 588 (Ohio 1941)). The concept of privilege is specifically incorporated in the definition of "defamation." *See McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345, 353, 609 N.E.2d 216 (Ohio Ct. App. 1992) ("Defamation is the unprivileged publication of a false and defamatory matter about another.").

A statement is *absolutely* privileged, even if made with actual malice or in bad faith with knowledge of its falsity, when made in the context of a legislative proceeding, a judicial proceeding, or another act of state. *DiCorpo,* 69 Ohio St.3d at 505, 634 N.E.2d at 209.  Otherwise, a false statement may be subject to a *qualified* privilege if the defendant can show that "(1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to

the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties." *Mosley v. Evans*, 90 Ohio App.3d 633, 636, 630 N.E.2d 75, 77 (Ohio Ct. App. 1993) (citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 246, 331 N.E.2d 713, 719 (Ohio 1975)). A qualified privilege, once it is found to exist, "can be defeated only by a clear and convincing showing that the communication was made with actual malice." *A & B-Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 11, 651 N.E.2d 1283, 1292 (Ohio 1995).

In this case, Defendants Groff and Parfitt maintain that these privilege doctrines extend to claims of negligent misidentification. They argue that their statements to the UD police officers are absolutely privileged because they are the first step in a judicial proceeding. In the alternative, they argue that the statements are protected by a qualified privilege, and that Plaintiffs' Amended Complaint fails to allege facts sufficient to support a finding of actual malice.

Defendants, however, have not identified *any* Ohio case in which either privilege doctrine has been recognized as a defense to a claim of negligent misidentification, and the Court has been unable to find one. The cases cited by Defendants involve claims of defamation and malicious prosecution.

The argument could be made that a plaintiff should not be able to circumvent these privilege doctrines by filing a claim of negligent misidentification instead of a claim of defamation. However, as Plaintiffs note, *Wigfall* could be

11

read as impliedly rejecting the idea that the privilege doctrines extend to claims of negligent misidentification:

> [W]e acknowledge that public policy does encourage citizens to cooperate with investigating authorities to identify perpetrators of crime. However, we are unwilling to extend public policy to such an extent that due care need not be used when information is supplied to investigating authorities. The serious consequences which accompany an individual being identified as a suspected criminal require the imposition of a duty to use due care on those who give information to assist investigating authorities.

*Wigfall*, 107 Ohio App.3d at 675, 669 N.E.2d at 318.  This statement, combined with the fact that there appears to be no Ohio case in which the privilege doctrines have been applied to a claim of negligent misidentification, makes the Court hesitant to dismiss Plaintiffs' claims against Groff and Parfitt.

Moreover, even assuming that the privilege doctrines are available as a defense to a negligent misidentification claim, it is not clear whether either would apply to this particular set of facts, as explained in greater detail below.  Because these issues are dispositive, and because there is so little guidance available, certification to the Ohio Supreme Court is warranted.

### 1.    Absolute Privilege

Even assuming that the doctrine of absolute privilege would generally apply to claims of negligent misidentification, it is not clear whether it would apply to the statements that Groff and Parfitt made to the UD police officers.

As noted above, statements made in the course of a "judicial proceeding" are absolutely privileged, and cannot form the basis for a claim of defamation.  In

*DiCorpo,* the court noted that this privilege extends to "every step" in the judicial proceeding, "from beginning to end."  The court found that, because statements made in an informal complaint to a prosecuting attorney set in motion possible prosecution proceedings, such statements are absolutely privileged, so long as they bear "some reasonable relation to the activity reported."  The court noted that, absent the threat of civil liability, individuals will be more likely to report criminal activity, which "will aid in the proper investigation of criminal activity and the prosecution of those responsible for the crime."  *DiCorpo*, 69 Ohio St.3d at 505-06, 634 N.E.2d at 209-10.

Relying on *DiCorpo*, many Ohio courts have further extended the doctrine of absolute privilege to statements made to a *law enforcement officer*, implicating a third party in criminal activity.  *See Savoy v. Univ. of Akron*, 2014-Ohio-3043, ¶ 20, 15 N.E.3d 430, 435 (Ohio Ct. App. 2014) ("Absolute privilege applies to shield individuals from civil liability for statement made to prosecutors or police reporting criminal activity."); *Lasater v. Vidahl*, 2012-Ohio-4918, ¶9, 979 N.E.2d 828 (Ohio Ct. App. 2012) ("an absolute privilege should apply to those who report criminal activity to police officers.").  *See also Haller v. Borror*, No. 95APE01-16, 1995 WL 479424 (Ohio Ct. App. Aug. 8, 1995) (applying absolute privilege to statements made to police officers); *Fair v. Litel Commc'n, Inc.*, No. 97APE06-804, 1998 WL 107350 (Ohio Ct. App. Mar. 12, 1998) (same); *Lee v. City of Upper Arlington*, No. 03AP-132, 2003 WL 23024437 (Ohio Ct. App. Dec. 30,

2003) (same); *Morgan v. Cmty. Health Partners*, No. 12CA010242, 2013 WL 2407123 (Ohio Ct. App. June 3, 2013) (same).[2]

However, not all Ohio appellate courts have held that statements to police officers are absolutely privileged.  In *Scott v. Patterson*, No. 81872, 2003 WL 21469363 (Ohio Ct. App. June 26, 2003), the plaintiff brought a malicious prosecution action against someone who gave false information to police officers, framing him for a crime.  The court drew "a line between giving a statement to the police at the scene of a crime and giving a sworn affidavit to a prosecutor," and held that, because initial police work is investigatory and not part of a "judicial proceeding," the doctrine of absolute immunity did not apply.  *Id.* at *2.  In the alternative, the court held that the statement at issue was "designed to frame, not to aid in the proper investigations of the case," and therefore did not "bear a reasonable relation to the activity reported."  *Id.* at *3.  In *Olsen v. Wynn*, No. 95-A-0078, 1997 WL 286181, at **5-6 (Ohio Ct. App. May 23, 1997), a defamation case, the court held that statements made to the county sheriff were not absolutely privileged, but were instead protected by a qualified privilege.

In a similar vein, there are fractured opinions on this subject within the federal courts in this district.  In *Dehlendorf v. City of Gahanna*, 786 F. Supp.2d 1358 (S.D. Ohio 2011), a defamation case, the district court reviewed the split of authority among Ohio appellate courts, and concluded that "the Supreme Court of

---

[2]  Notably, none of these cases involved claims of negligent misidentification.

14

Ohio would not consider statements made to the police part of a 'judicial proceeding' and therefore would not extend absolute immunity to statements made to the police." *Id.* at 1365. The district court noted that, among the courts that had extended an absolute privilege to statements made to police officers, there was little or no discussion of *why* this might be warranted. *Id.* at 1360-62. It found that the *Scott* decision—distinguishing between statements made to prosecutors, who make the decision whether to initiate judicial proceedings, and statements made to police officers, who simply initiate an investigation—was a "well-reasoned interpretation of the holding in *DiCorpo.*" *Id.* at 1362-64.

However, in *Brunswick v. City of Cincinnati*, No. 1:10-cv-617, 2011 WL 4482373 (S.D. Ohio Sept. 27, 2011), in analyzing a malicious prosecution claim, the court held that statements made to the investigating officer *were* absolutely privileged. It acknowledged the split of authority among state and federal courts, but concluded that "[t]he level of immunity afforded to complainants in cases such as this should not turn on whether they decide to go straight to a prosecutor or talk to a police officer first." *Id.* at *9 n.5.

In short, even with respect to claims of defamation and malicious prosecution, there is no consensus, under Ohio law, concerning whether statements made to police officers, implicating someone else in criminal activity, are absolutely privileged.

Citing the alternate holding in *Scott*, Plaintiffs argue that this unsettled issue is not dispositive. They maintain that, even if such statements are considered to

15

be part of a "judicial proceeding," the statements made by Groff and Parfitt are not absolutely privileged because they do not bear a reasonable relation to the activity reported. As noted earlier, the *Scott* court held, in *dicta*, that statements made for the purpose of framing the plaintiff for a crime he did not commit could not be deemed to be reasonably related to the activity reported. In their memorandum in opposition, Doc. #32, Plaintiffs allege that this situation is analogous in that Groff and Parfitt made their false statements to the police in bad faith, seeking to retaliate against Plaintiffs for a perceived slight. However, as Parfitt points out, it cannot be said that a statement bears no reasonable relation to the activity reported simply because it is false or made in bad faith. The absolute privilege applies regardless of these defects. *See DiCorpo*, 69 Ohio St.3d at 505, 634 N.E.2d at 209. Here, the statements at issue were all pertinent, and bore *some* reasonable relation to the activity that Groff called to report to the police, *i.e.*, Plaintiffs' refusal to leave Defendants' property.

Given that Ohio law is unclear concerning the applicability of the doctrine of absolute privilege to statements made to police officers, implicating a third person in criminal activity, and that this issue is potentially dispositive, certification is warranted.

### 2. Qualified Privilege

Finally, Defendants argue that, regardless of whether their statements are absolutely privileged, the statements are, at the very least, qualifiedly privileged. They cite to numerous cases, involving claims of defamation and malicious

16

prosecution, in which statements made to police officers, implicating a third party in criminal activity, have been found to be protected by a qualified privilege. *See, e.g.*, *Atkinson v. Stop-N-Go Foods, Inc.*, 83 Ohio App.3d 132, 136, 614 N.E.2d 784, 787 (Ohio Ct. App. 1992); *Stokes v. Meimaris*, 111 Ohio App.3d 176, 189-90, 675 N.E.2d 1289, 1298 (Ohio Ct. App. 1996); *Dehlendorf*, 786 F. Supp.2d at 1363-64 (collecting cases).

Plaintiffs, however, note that Defendants have not cited to any case recognizing the doctrine of qualified privilege as a defense to a claim of negligent misidentification. Citing *Wigfall*, 107 Ohio App.3d at 675, 669 N.E.2d at 318, Plaintiffs again argue that, because of the serious consequences of being misidentified as a criminal suspect, this defense is not applicable to this particular tort.

In *A & B-Abell Elevator Co.,* the Ohio Supreme Court held that, once a qualified privilege is found to exist, the "actual malice" standard applies not only to the defamation claim, but to derivative tort claims as well. 73 Ohio St.3d at 15, 651 N.E.2d at 1295. Here, however, because the law is unsettled, it is not clear whether the statements at issue are qualifiedly privileged. Moreover, Plaintiffs have not asserted a defamation claim in this case. Given that they have asserted only a single claim of negligent misidentification, it cannot be deemed a "derivative" tort claim.

Assuming that the statements are qualifiedly privileged, that privilege "can be defeated only by a clear and convincing showing that the communication was

17

made with actual malice." *Id.* at 11, 651 N.E.2d at 1292.  Defendants argue that, because Plaintiffs' Complaint alleges only *negligent* conduct, and fails to allege any facts supporting a finding of actual malice, the claim must be dismissed.  The Court disagrees.  "Actual malice" exists if the statements were made "with knowledge that the statements are false or with reckless disregard of whether they were false or not."  *Hahn*, 43 Ohio St.2d 237, 331 N.E.2d 713, syl. ¶2 (Ohio 1975).

 Here, the Amended Complaint alleges that Groff and Parfitt had no reason to believe that Plaintiffs were attempting to steal anything or to enter Defendants' residence without permission, and had no reason to be afraid.  Doc. #3, PageID#97.  Yet Defendants allegedly told Sergeant Ryan that Plaintiffs refused to leave the property, intended to cause harm, and attempted to rob them.  *Id.* at PageID#121.  Viewing these allegations in the light most favorable to Plaintiffs, actual malice could be inferred.  Accordingly, even assuming that the statements are qualifiedly privileged, dismissal is not warranted on this basis.

 Given that there are several issues of Ohio law that may be dispositive, and for which there is no controlling precedent, the Court certifies the following questions to the Supreme Court of Ohio:

(1) What is the statute of limitations for claims of negligent misidentification?;

(2) Is the doctrine of absolute privilege applicable to claims of negligent misidentification and, if so, does it extend to statements made to law enforcement officers implicating another person in criminal activity?; and

18

(3) Is the doctrine of qualified privilege applicable to claims of negligent misidentification?

## III.    Motions for a Stay (Docs. ##27, 29)

Defendants Parfitt and Groff have also moved to stay all proceedings pending resolution of these unresolved, controlling issues of state law by the Ohio Supreme Court.  Docs. ##27, 29.  As the Sixth Circuit held in *Gray v. Bush*, 628 F.3d 779, 784 (6th Cir. 2010), under the *Burford* abstention doctrine, a district court should typically stay federal proceedings until the state court resolves difficult questions of state law.

Accordingly, the Court SUSTAINS Defendants' Motions for a Stay, Docs. ##27 and 29, and STAYS all proceedings as to Defendants Parfitt and Groff pending further action by the Ohio Supreme Court.  At the conference call scheduled for December 7, 2015, at 5:00 p.m., the Court will discuss whether this stay should be extended to the other Defendants as well.

## IV.    Conclusion

For the reasons set forth above, the Court SUSTAINS Defendants Dylan Parfitt and Michael R. Groff's alternative Motions to Certify Questions of Law to the Ohio Supreme Court, Docs. ##26, 28.  The Court also SUSTAINS Defendants' Motions for a Stay, Docs. ##27, 29, and STAYS all proceedings with respect to Defendants Parfitt and Groff pending further action by the Ohio Supreme Court.

The Clerk of Court is directed to attach a copy of this Decision and Entry to the Certification Order, which shall be filed contemporaneously.


Date: December 7, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE